UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-24838-CIV-GOODMAN
[CONSENT CASE]

VOLKSWAGEN GROUP OF
AMERICA, INC., et al.,

      Plaintiffs,

v.

ANDY VARONA, et al.,

      Defendants.

_____/

### ORDER ON PLAINTIFFS' SUMMARY JUDGMENT MOTION

Plaintiffs allege that Defendants sold counterfeit Audi wheel sets through Defendants' eBay store, and, in doing so, infringed on Plaintiffs' trademark and design patent rights. Defendant Varona denies operating the eBay store (despite overwhelming evidence to the contrary), but he also contradicts this outright denial to say that the wheel sets Defendants sell on eBay are not infringing on Audi's trademarks and design patent. Plaintiffs filed a summary judgment motion, Defendant filed an opposition response, and Plaintiffs filed a reply. [ECF Nos. 65; 70; 73].

For the reasons outlined below, the Court **grants in part** Plaintiffs' motion for summary judgment on Counts I-IV for Defendants' sale of the counterfeit wheel set to Plaintiffs' investigator. The issue of damages (including for any additional wheel sets)

will be addressed during the scheduled bench trial.

## I.     Background

### A.     Complaint

Plaintiffs, Volkswagen Group of America, Inc. and Audi AG, filed an amended verified complaint against Defendants Andy Varona and Verotec Wheels, Inc. [ECF No. 41]. Plaintiffs allege that in June 2019, "Plaintiffs were informed that Defendants were suspected of operating a counterfeiting ring, and importing and selling counterfeit parts and accessories bearing the Audi Trademarks in the United States." *Id.* at p. 6. Thus, Plaintiffs began an investigation of Defendants. *Id.* As discussed further below in the undisputed material facts, Plaintiffs' investigator purchased a wheel set, which was advertised as a new Audi wheel set, from Defendants and confirmed that it was counterfeit. *Id.* at pp. 6-8.

Plaintiffs allege the following counts against Defendants: Count I: Trademark Infringement and Counterfeiting under 15 U.S.C. § 1114; Count II: False Designation of Origin or Sponsorship and False Advertising under 15 U.S.C. § 1125(a); Count III: Trademark Dilution under 15 U.S.C. § 1125(c); and Count IV: Infringement of United States Design Patent No. D721,028 S.

Plaintiffs seek the entry of a permanent injunction against Defendants, an award of statutory damages, and recovery of attorney's fees and costs.

### B.      Varona's Sham Declaration

In an attempt to overcome the overwhelming evidence presented in Plaintiffs' statement of materials facts in support of their motion for summary judgment, Defendants submitted the Declaration of Andy Varona. The declaration is clearly a failed attempt to muddy the factual record and create disputed questions of fact. The declaration is contradictory to Varona's deposition testimony, and relies on no support other than Varona's own statements and his own supplemental unverified answers to interrogatories.

"When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Bentley Motors Corp. v. McEntegart*, 976 F. Supp. 2d 1297, 1307 (M.D. Fla. 2013) (citing *Van T. Junkins and Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)). The Eleventh Circuit finds such affidavits to be "'shams,' and, although a court should not reject an affidavit merely because it is at odds with statements made in an earlier deposition, the court need not give credence to an affidavit that contradicts previous testimony without any valid explanation or clarification." *Id.*

Here, there are multiple instances where Varona contradicts prior testimony without any valid explanation or clarification.

In his declaration, Varona claims that "any ownership of or interest in any online

store bearing that name does not belong to me," and "Defendants do not have an eBay account." [ECF No. 70-1, ¶¶ 4-5]. However, Mr. Varona testified during his deposition that he (through his corporation Verotec Wheels) sells "cars, wheels, tires, racing cars, and some automotive racing equipment" that he gets from distributors on eBay through his username "OEM Wheels Direct." [ECF Nos. 66-5, pp. 8-9; 1-4, p. 2; 66-5, pp. 28 (deposition testimony from Varona stating that his CPA filed an application for registration of fictitious name "OEM Wheels Direct" to be in compliance with eBay's requirement that user names be registered as fictitious names), p. 38 ("[T]his is the PayPal account where you received money for the goods you sold on eBay under the user name OEM Wheels Direct? A. Correct.")].

Varona also claims in his declaration that "Tech Designs" is responsible for creating the descriptions on the eBay page; however, during his deposition he testified that *he* provides the description to "Tech Designs" and that "[b]oth of us post listings." *See* ECF No. 66-5, p. 47.

Finally, Varona's statement in his declaration that he was not aware that Audi wheels were being listed for sale is contradicted both by his later statement in the declaration that he was aware of one item that was offered for sale and by his earlier deposition testimony. *See* ECF Nos. 66-5, pp. 3-4; 66-5, p. 106:5-12 ("Q. Have you ever listed Audi wheels? A. They've listed Audi wheels as in my IT department, yes."). And, as detailed below, Plaintiffs provided screenshots of an eBay listing for an "Audi" wheel

set from "OEM Wheels Direct." Plaintiffs' investigator, Michael Jaczewski, purchased the wheel set and Russell Trowbridge, Manager of Audi Parts, and confirmed they were counterfeit goods. [ECF Nos. 66-10, p. 2; 66-14].

Accordingly, Varona's declaration does not need to be considered because it is a sham declaration. *See Santhuff v. Seitz*, 385 F. App'x 939, 945 (11th Cir. July 6, 2010) (finding district court did not err in rejecting as a sham the affidavit of a non-party witness, and explaining that "we see no reason, however, to refuse to apply the sham rule" under the facts and noting that "a sham is a sham"); *see also Liebman v. Metropolitan Life Ins. Co.*, 708 F. App'x 979 (11th Cir. Sept. 8, 2017) (affirming order excluding inconsistent paragraphs of employee's declaration under the sham affidavit rule). *See generally Adelman–Tremblay v. Jewel Cos.*, 859 F.2d 517, 521 (7th Cir. 1988) (internal citation omitted) ("The purpose of summary judgment motions—to weed out unfounded claims, specious denials, and sham defenses—is served by a rule that prevents a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony.").[1]

However, in an abundance of caution, the Court still considered the declaration to the extent that Varona's statements did not contradict prior statements and when reviewing Defendants' response to Plaintiffs' statement of material facts.

---

[1]    The *Santlhuff* Court cited *Adelman-Tremblay* with approval. *Santhuff*, 385 F. App'x at 945.

### C.     Undisputed Material Facts

The following facts are undisputed unless otherwise noted. The numbered paragraphs correspond to the numbered paragraphs in Plaintiffs' Statement of Undisputed Material Facts. [ECF No. 66].

1.      Plaintiff Audi AG ("Audi") is a world-famous automobile manufacturer that sells Audi automobiles and genuine parts and accessories through a network of licensed Audi dealerships. In addition to the physical car lots operated by its licensees, Audi also operates various websites, including without limitation parts.audiusa.com, through which consumers can purchase genuine Audi parts, Audi wheels, automotive accessories, and Audi-branded merchandise directly from Audi.

2.      Under agreement with Audi, Plaintiff Volkswagen Group of America, Inc. ("VWGoA") polices and enforces Audi's trademarks in the United States.

3.      Audi uses its trademarks in connection with the marketing of Audi vehicles, accessories, parts, and Audi-branded merchandise. Audi is the owner of numerous federally-registered trademarks for automobiles, parts, accessories, and a long list of related services and merchandise, including the sample attached to the Verified Complaint, collectively referred to as the "Audi Trademarks."

4.      Audi's world-famous and distinctive trademarks symbolize the Audi brand and its marketability, reputation, and goodwill. Audi first registered AUDI® as a trademark with the United States Patent and Trademark Office (or "USPTO") in 1960

(U.S. Reg. No. 0,708,352) and has subsequently obtained numerous other registrations for that mark. Audi first registered the AUDI RINGS® trademark with the USPTO in 1971 (U.S. Reg. No. 0,906,525) and has also obtained numerous other registrations for that mark. True and correct "status" copies of the Audi Trademark registrations, obtained from the Trademark Status Document Retrieval (TSDR) database of the United States Patent and Trademark Office, are attached to the Verified Amended Complaint as Exhibit 2. (ECF No. 1-2). Audi's registrations for the Audi Trademarks are valid, unrevoked, subsisting, and many are incontestable.

5.     Audi extensively and continuously uses the Audi Trademarks on advertisements, vehicles, automobile accessories, apparel, and other products to identify the source of Audi's goods and services. In addition to producing high-quality vehicles, Audi produces automotive parts and accessories for its vehicles, including, without limitation, wheels that bear or are in the form of the Audi Trademarks.

6.     Audi has spent hundreds of millions of dollars and has expended significant effort in advertising, promoting, and developing the Audi Trademarks throughout the world. As a result of such advertising and expenditures, Audi has established considerable goodwill in its trademarks. The distinctive Audi Trademarks have become widely known and recognized throughout the world as a symbol of high-quality automotive goods and services. The goodwill associated with the Audi Trademarks is of incalculable and inestimable value to Audi.

7.      Audi has further protected its innovative designs through design patents issued by the USPTO, including but not limited to the asserted design patent, D721,028 S (the "'028 patent"). The '028 patent is valid and enforceable. A true and correct copy of the '028 patent is attached to the Verified Amended Complaint as Exhibit 3.

8.      Audi AG is the assignee of all right, title, and interest in and to the '028 patent and possesses the exclusive right of recovery for past, present, and future infringement, which was duly issued by the USPTO on January 13, 2015. Defendants admit they had actual knowledge of the '028 patent since at least November 22, 2019.

9.      Defendants used the Audi Trademarks without authorization in advertisements and on counterfeit wheel sets that they sold, and Defendants admit that they are not authorized to use the Audi Trademarks.[2]

10.     Defendants sell and have sold counterfeit goods bearing the Audi Trademarks using the Internet, including without limitation, eBay.[3]

---

[2]      Defendants dispute this paragraph, stating that they "deny using any trademarks belonging to Audi." [ECF No. 71, ¶ 9]. In support, Defendants merely cite to Andy Varona's statement in his sham declaration that "[t]he Defendants do not sell counterfeit Audi wheels." [ECF No. 70-1, ¶ 6]. This self-serving statement does not rebut the overwhelming evidence provided by Plaintiffs proving that Varona/Verotec Wheels sold counterfeit AUDI wheel sets on eBay. Thus, this paragraph is considered undisputed. *See Bell v. City of Auburn, Ala.*, 722 F. App'x 898, 899 (11th Cir. 2018) (finding that the district court did not abuse its discretion in disregarding portions of Plaintiff's declaration as a sham).

[3]      Again, Defendants dispute this statement by merely citing to Varona's statement in his sham declaration that "[t]he Defendants do not sell counterfeit Audi wheels." [ECF No. 70-1, ¶ 6]. This self-serving statement does not rebut the overwhelming evidence

11.     Defendants use advertising keywords in their eBay listings such as "brand new," "made in Germany," and "OEM" ("original equipment manufacturer"). eBay has a specific "search manipulation policy" banning the use of keywords. The title of the counterfeit wheel set purchased by Plaintiffs' investigator in this case contained multiple misleading keywords: "20 AUDI RS 2017-19 WHEELS RIMS NEW OEM RS5 A5 A6 A7 A8 MADE IN GERMANY."[4]

12.     Defendants advertise and sell counterfeit Audi wheel sets, which they advertise as being "brand new" and "OEM" on the Internet via eBay using the eBay seller ID "oemwheelsdirect."[5]

---

provided by Plaintiffs showing that Defendants sold a counterfeit wheel set to Plaintiffs' investigator. Thus, this paragraph is considered undisputed.

[4]     Defendants "dispute" this entire paragraph, but the only portion directly addressed in their opposition is that, according to Varona, eBay "encourages the use of these and certain phrases in advertising products." [ECF No. 71, p. 2]. Plaintiffs provide a copy of eBay's search manipulation policy, which does in fact state that "using keywords that are not directly related to the item for sale is not allowed. All the words in the listing need to be accurate and refer only to the item for sale." [ECF No. 66-8, p. 2]. Accordingly, Defendants have not actually shown that this fact is disputed.

[5]     Defendants "dispute" this by stating, "A company called Tech Designs is responsible for the descriptions placed on eBay advertisements for the sale of items listed." [ECF No. 70-1, p. 3]. Defendants cite to Varona's deposition testimony in support of this statement. Varona's deposition testimony is that Juan at Tech Designs assists him with the eBay listings, including by running repeat advertisements where the contents are copied and pasted and Varona "give[s] him a description of what's for sale, and he'll put it on the listing." [ECF No. 66-5, pp. 46-47]. Both Varona and Juan post the listings. *Id.* This does not directly contradict paragraph 12.

13.     Defendants have posted several advertising images on the Internet depicting the unauthorized, counterfeit Audi wheel sets, which incorporate and display the Audi Trademarks, both on the goods, and in advertising language using keywords.[6]

14.     Defendants registered the eBay seller ID "oemwheelsdirect," through which Defendants advertise, offer for sale, and sell counterfeit goods bearing Audi's world-famous Trademarks, including the AUDI RINGS trademarks and AUDI trademarks.[7]

15.     Defendants registered the PayPal account No. 2145988751537780935 linked to eBay seller ID "oemwheelsdirect" using the email address "verotecwheels2016@outlook.com," ("Defendants' PayPal Account") to receive funds for the sale of goods on eBay, including counterfeit goods bearing Audi's world-famous

---

[6]     Defendants "dispute posting images on the internet of counterfeit Audi wheels" and again rely on Varona's statements to the contrary in his sham declaration. [ECF No. 71, p. 3]. Further, Defendants state that "the wheels allegedly sold by Defendants are dual purpose . . . and bear no resemblance to those depicted by Plaintiffs in their Complaint and in support of their Motion for Summary Judgment." *Id.* These self-serving statements do not rebut the overwhelming evidence provided by Plaintiffs that Defendants sold Plaintiffs' investigator counterfeit wheels, including photographic evidence. Thus, this statement has not been disputed by Defendants.

[7]     Defendants "dispute registering 'oemswheelsdirect' or offering or selling counterfeit Audi wheels. Defendants do not have an Ebay account." *Id.* Again, this self-serving statement in his sham declaration does not contradict the overwhelming evidence that Plaintiffs have presented.

Trademarks.[8]

16.     Defendants' PayPal Account was registered on July 26, 2016 by Defendants. The registrant and operator information for Defendants' PayPal Account match the last four digits of Defendant Andy Varona's social security number (7501), Defendant Verotec Wheels, Inc.'s tax ID number (EIN), and Defendants' former and present addresses. The account is registered under the name Hector Jude Varona, which is the former legal name of Defendant Andy Varona. Defendant Andy Varona testified that he registered and operates Defendants' PayPal Account using the name Hector Jude Varona.[9]

17.     Defendants' PayPal Account is linked to bank accounts and credit cards that only Defendant Andy Varona has access to, through which he receives funds for items sold on the eBay store "oemwheelsdirect," including funds for the sales of counterfeit wheel sets bearing the Audi Trademarks, including the AUDI RINGS® trademarks and AUDI® trademarks.[10]

---

[8]     Defendants "dispute receiving funds for the sale . . . of counterfeit Audi wheels . . . Moreover, Defendants do not own any eBay Seller IDs." *Id.* This is plainly contradicted by the evidence presented by Plaintiffs, including Varona's own deposition testimony, and thus paragraph 15 is not considered disputed.

[9]     Defendants say this paragraph is disputed but they do not provide any evidence supporting the contrary other than Varona's sham declaration and unverified supplemental answers to interrogatories. *See* ECF No. 71, p. 4.

[10]    Defendants only dispute "selling counterfeit wheel sets bearing any Audi Trademarks." *Id.* This self-serving statement is contradicted by overwhelming evidence that Defendants sold a counterfeit wheel set to Plaintiffs' investigator.

18.     Defendants have received at least $5,048,690.83 for items sold on their eBay store "oemwheelsdirect" from July 26, 2016 until June 22, 2020. Sales data provided by PayPal in response to Plaintiffs' third-party discovery requests was limited to sales from June 5, 2018 to June 22, 2020 due to PayPal's record keeping policy.[11]

19.     A true and correct copy of a printout of the "oemwheelsdirect" eBay store webpage listing Defendants' products for sale is attached to the First Amended Verified Complaint as Exhibit 4.[12]

20.     The counterfeit Audi wheel set titled "20 AUDI RS 2017-19 WHEELS RIMS NEW OEM RS5 A5 A6 A7 A8 MADE IN GERMANY" offered for sale on the "oemwheelsdirect" eBay store was described as "4 Audi 20[in] RS Wheels," "brand new," "in closed box," never "driven on," and "made in Germany."[13]

---

[11]     Defendants only dispute this paragraph by stating "Defendants do not have an Ebay account." As discussed further below, this claim is fundamentally illogical and incredible, considering that Defendants discuss their eBay account in detail in other portions of Varona's affidavit. Accordingly, this paragraph is not considered to be in dispute.

[12]     Defendants dispute this paragraph by stating that "Defendants do not have an Ebay account. The listings were made by Tech Designs and contain an express disclaimer negating Plaintiffs' assertion." [ECF No. 71, p. 4]. As discussed, Defendants' clearly have an eBay account and the fact that Tech Designs assisted Defendants with its postings does not contradict that "oemwheelsdirect" listed counterfeit Audi wheels for sale.

[13]     Defendants dispute this paragraph by stating that "Defendants do not have an Ebay account. The listings were made by Tech Designs and contain an express disclaimer negating Plaintiffs' assertion." [ECF No. 71, p. 4]. This does not contradict paragraph 20.

21.     In June 2019, Plaintiffs began an investigation of Defendants.

22.     In July 2019, Plaintiffs' investigator purchased an infringing and counterfeit wheel set from the "oemwheelsdirect" eBay store titled "20 AUDI RS 2017-19 WHEELS RIMS NEW OEM RS5 A5 A6 A7 A8 MADE IN GERMANY" to evaluate authenticity, among other things. Defendants received payment for the products via PayPal from Plaintiffs' investigator, and shipped the goods to Plaintiffs' investigator.[14]

23.     PayPal records reflect 27 sales associated with the email verotecwheels2016@outlook.com, which include item titles describing "Audi" wheel rims. These items reflect a gross profit of $40,615.14.[15]

24.     In July 2019, Defendants shipped the goods purchased by Plaintiffs' investigator to a residential address in Florida. True and correct copies of the mailing labels for each item are attached to the First Amended Verified Complaint as Exhibit 5. True and correct copies of photographs of Defendants' products, including counterfeit AUDI RINGS®, as received by the investigator, are attached to the First Amended

---

[14]     Defendants dispute "selling any counterfeit wheels bearing Plaintiffs' Trademarks." [ECF No. 71, p. 4]. This is plainly contradicted by the evidence presented by Plaintiffs that Defendants sold a counterfeit wheel set to Plaintiffs' investigator and thus paragraph 22 is not considered disputed.

[15]     Defendants deny "selling any counterfeit wheels bearing Plaintiffs' Trademarks." [ECF No. 71, p. 5]. This is plainly contradicted by the evidence presented by Plaintiffs that Defendants sold Plaintiffs' investigator a counterfeit wheel set; and this does not dispute the information contained in the PayPal records.

Verified Complaint as Exhibit 6. Additional photos of the counterfeit wheels sold to Plaintiffs' investigator are attached as Exhibit C to the Declaration of Investigator in Support of Plaintiffs' Motion for Summary Judgment.[16]

25.     Audi has inspected the goods sold by Defendants and have confirmed that they are counterfeit.[17]

---

[16]     Defendants dispute this paragraph by merely stating "Defendants did not ship any counterfeit wheels to anyone" and that "the photographs purportedly representing wheels that were bought from them bears no resemblance to those offered for sale from Defendants supplier." *Id.* This is plainly contradicted by the evidence presented by Plaintiffs and the allegation that the photographs "bear no resemblance" to those offered for sale by Defendants' supplier does not contradict paragraph 24.

[17]     Defendants dispute this by stating "[a]ny wheels sold by the Defendants bear no resemblance to those referenced in Paragraph 25." *Id.* This does not contradict Plaintiffs' statement that it inspected the goods sold by Defendants and confirmed they are counterfeit.

| Audi Trademark<br>U.S. Reg. No. 3,201,037 | Infringing and Counterfeit<br>Product |
|---|---|
|  | |



26.     As shown above, Defendants' infringing and counterfeit wheel set that was

advertised, offered for sale, and sold via the eBay store "oemwheelsdirect" bears the

world-famous Audi Trademarks, including, but not limited to, the AUDI RINGS® mark.

The top photograph shows the wheel as advertised, the second photograph shows the

wheel shipped to Plaintiffs' investigator, and the third photograph is a zoomed-in view

of the wheel shipped to Plaintiffs' investigator.[18]

27.      In Defendants' description of the infringing and counterfeit wheel set advertised, offered for sale, and sold via the eBay store "oemwheelsdirect," Defendants stated the wheels are "brand new," "taken off 2017 Audi RS but also fit the A5 A6 A7 [and] A8 models," "made in Germany," and "OEM center caps are included with the wheels."[19]

28.      Defendants are in no way affiliated with, authorized by, or sponsored by Audi, and have no authority to use the Audi Trademarks to identify the goods and services that they advertise, promote, or sell. Nor are Defendants authorized to make, use, sell, offer to sell, or import products using the Audi Marks.

29.      Defendants use the Audi Trademarks and images of Audi's automobiles on the "oemwheelsdirect" eBay store, while using strategic item titles and descriptions that will trigger their listings when consumers enter Internet search terms for Audi Products.[20]

---

[18]      Defendants "dispute" this paragraph by stating they have not sold "'infringing and counterfeit wheels' bearing Plaintiffs' marks. The pictures depicted in paragraph 26 differ vastly from the wheels sold by the Defendants." *Id.* This does not directly contradict Plaintiffs' statement regarding the specific wheel set purchased by Plaintiffs' investigator.

[19]      Defendants again dispute this paragraph with an outright denial that they "do not have an eBay account" and "do not sell counterfeit Audi Wheels." *Id.* This is rebutted by significant evidence in the record, including Varona's own deposition testimony and evidence of Defendants' sale to Plaintiffs' investigator. Thus, this paragraph is considered undisputed.

[20]      Defendants dispute this paragraph with an outright denial that they "do not have an eBay account" and that "[a]ny terms used are in accordance with the eBay

30.     Defendants used keywords, including "Audi," "authentic," "OEM," and "factory" in their eBay item titles and descriptions of counterfeit and infringing Audi wheel sets to direct consumers searching for genuine Audi Products to Defendants' counterfeit Audi wheel sets it offered for sale.[21]

32.     Audi exercises great care and exerts substantial effort to control the nature and quality of the genuine goods and services offered under the Audi Trademarks.

33.     Defendants are not subject to Audi's quality control specifications, Audi exercises no control over the quality of Defendants' counterfeit goods, and Defendants do not pay royalties to Audi.[22]

34.     Defendants have been accused of causing actual consumer confusion in a similar litigation, which remains pending, regarding Defendants' sale of a counterfeit

---

requirements." *Id.* This is contradictory since Defendants say they do not have an eBay account and then state they use the search terms in accordance with eBay's requirements. There is significant evidence in the record, including Varona's own deposition testimony, that Defendants operate the "oemwheelsdirect" eBay account. Thus, this paragraph is considered undisputed.

[21]     Defendants dispute this paragraph with the same claims as paragraph 12 -- with an outright denial that they "do not have an eBay account" and that "[a]ny terms used are in accordance with the eBay requirements." *Id.* There is significant evidence in the record, including Varona's own deposition testimony, that Defendants operate the "oemwheelsdirect" eBay account. Thus, this paragraph is considered undisputed.

[22]     Defendants dispute this paragraph only to say that they do not sell counterfeit Audi goods. Again, this is contradicted by overwhelming evidence that Defendants' sold a counterfeit wheel set to Plaintiffs' investigator.

Range Rover wheel set.

35.     The design of the wheels sold by Defendants is the same, or substantially the same, as the design of the '028 patent.[23]

36.     As the side-by-side comparison below reveals, Defendants sold a wheel set appearing to be identical to Audi's patented vehicle wheel rim designs.[24]



| U.S. Design Patent D721,028 S | Infringing and Counterfeit Product |
|---|---|

37.     As shown above, Defendants' wheel has a design that is the same, or substantially the same as the design of the '028 patent. [25]

---

[23]     Defendants dispute this by stating that "[t]here is no similarity between the wheels sold by Defendants and any Audi patented product." [ECF No. 71, p. 6]. Again, this is contradicted by the photographic evidence and thus this paragraph is not considered disputed.

[24]     Defendants dispute this by stating that "[t]here is no similarity between the wheels sold by Defendants and any Audi patented product." [ECF No. 71, p. 6]. Again, this is contradicted by the photographic evidence, and thus this paragraph is not considered disputed.

[25]     Defendants respond that they "are not involved in designing any of the products they sell." [ECF No. 71, p. 7]. However, this does not address whether the wheel Defendants sold is the same design as the '028 patent.

38.     Audi has not granted a license or any other authorization to Defendants to make use, offer for sale, sell, or import wheels that embody the design patented in the '028 patent, which is proprietary to Audi.

Additionally, Defendants filed their own statement of material facts. [ECF No. 72]. The only undisputed materials facts are the following:[26]

6.     The oemwheelsdirect eBay listing, that is the subject of this lawsuit, included disclaimer language in the item's description.[27]

9.     Plaintiffs never sent Defendants a cease and desist letter before filing this action.

## II.    Legal Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citation omitted). Thus, the Court may enter summary judgment "against a party who

---

[26]     The remining paragraphs are not undisputed and cite to Varona's self-serving sham declaration in support. The numbered paragraphs correspond to the numbered paragraphs in Defendants' statement of undisputed material facts.

[27]     Plaintiffs dispute this by stating that the language was "buried in the item's description" and is vague. [ECF No. 74, p. 3]. However, they do not dispute the existence of some disclaimer-type language included in the description.

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party must "show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the movant does so, then "the burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). The opposing party must proffer more than "a mere scintilla of evidence" to show "that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (internal quotations omitted).

Further, "if the non-movant's response consists of nothing 'more than a repetition of his conclusional allegations,' summary judgment is not only proper, but required." *Bentley Motors Corp.*, 976 F. Supp. 2d at 1309 (citing *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981).

When deciding whether summary judgment is appropriate, the Court views all facts and resolves all doubts in favor of the nonmoving party. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013).

### III.     Analysis

#### A.     Count I – Trademark Infringement and Counterfeiting (15 U.S.C. § 1114)

To prevail on a trademark infringement claim under 15 U.S.C. § 1114(1), a plaintiff "must prove (1) that its valid mark was used in commerce by the defendant without consent, and (2) that the unauthorized use was likely to cause confusion, to cause mistake, or to deceive." *Bentley Motors Corp.*, 976 F. Supp. 2d at 1310 (citing *Dieter v. B & H Indus. of S.W. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989)).

The parties do not dispute that Audi is the registered owner of the trademark AUDI® and the AUDI RINGS® trademark; and Plaintiffs have provided certificates of registration, which are prima facie evidence of the validity of the registered marks. *See* 15 U.S.C. § 1057(b). Further, Defendants agree that Plaintiffs never consented to Defendants' use of Plaintiffs' marks.

Here, the undisputed facts reflect that Defendants advertised an "Audi" wheel set on the oemwheelsdirect eBay store, which included photographs of what appeared to be an Audi wheel set. Specifically, oemwheelsdirect included an advertisement on eBay for "20 AUDI RS 2017-19 WHEELS RIMS NEW OEM RS5 A5 A6 A7 A8 MADE IN GERMANY." Plaintiffs' investigator purchased the wheel set and it was shipped to Plaintiffs' investigator. The return shipping label (containing Defendants' address) and the wheel set were photographed by the investigator upon receipt. The wheel cap contained the Audi trademarked rings and the wheels were identical in design to an Audi

wheel set. Audi inspected the wheel set and confirmed that it was counterfeit and not manufactured by Audi.

Accordingly, Plaintiffs have shown that Plaintiffs' valid mark was used in commerce by Defendants without Plaintiffs' consent.

Next, the Court considers whether Plaintiffs provided proof of a likelihood of confusion, which requires the Court to consider the following factors: "(1) type of mark, (2) similarity of mark, (3) similarity of the products the marks represent, (4) similarity of the parties' retail outlets and customers, (5) similarity of advertising media used, (6) defendant's intent and (7) actual confusion." *Dieter*, 880 F.2d at 326.

Defendants advertised and sold a wheel set with a center cap mark that is ***identical*** to Plaintiffs' mark, the wheel set included the same design as the Audi '028 patent design (as discussed further below), and Defendants advertised the wheel sets as "Audi," "factory," and "OEM." Additionally, it is undisputed that Plaintiffs' mark is strong, Defendants' sale of wheel sets competes with the sale of genuine Audi wheel sets as they both target consumers seeking to buy genuine Audi goods via the internet, and intent can be inferred from the identical copying of the Audi mark and design patent and advertising. Actual confusion need not be shown as "no single factor is determinative by itself." *Badia Spices, Inc. v. Gel Spice Co.*, No. 15-cv-24391, 2019 WL 7373002, at *2 (S.D. Fla. Sept. 27, 2019)

Further, here, where counterfeit goods are involved, application of these factors

may not be necessary. *See Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1359 (S.D. Fla. 2017) (internal citations omitted) ("[T]hese factors are more geared towards comparing two distinct, albeit similar, marks. By contrast, application of the factors is unnecessary where use of an identical mark—that is, a counterfeit mark—is at issue.").

"The Lanham Act imposes liability for trademark counterfeiting on any person who shall 'use in commerce . . . any counterfeit . . . of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.'" *Bentley Motors Corp.*, 976 F. Supp. 2d at 1312 (internal citation omitted). A counterfeit mark "is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127.

Because a counterfeit mark is identical to a protected mark, it is inherently confusing, and consumer confusion is presumed. *See Casa Dimitri Corp.*, 270 F. Supp. 3d at 1359; *see also Monsanto Co. v. Campuzano*, 206 F. Supp. 2d 1252, 1262 (S.D. Fla. 2002) ("I presume that the counterfeit items caused public confusion in the marketplace, as the counterfeit marks and the genuine marks are substantially identical both in design and use and it is undisputed that the counterfeit marks were sold to the public."); *Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1099 (S.D. Cal. 2018) ("Again, the Court finds it unnecessary to analyze the likelihood of confusion test because the marks are identical.").

For example, in *Daimler AG*, the defendant operated a website that sold "Mercedes Benz Wheels." *Daimler AG*, 334 F. Supp. 3d at 1096. The wheels sold by the defendant contained Daimler's Three-Point Star Mark on the center cap. *Id.* at p. 1099. The mark was not altered or changed from Daimler's Three-Point Star Mark in any way. *Id.* The Court found it unnecessary to analyze the likelihood of confusion test because the marks were identical and granted summary judgment for trademark infringement and counterfeiting in Daimler's favor. *Id.* at 1100-01.

Similarly, here, Plaintiffs have proven that Defendants advertised an "Audi" wheel set that contained a mark identical to Audi's four ring mark on the center cap and sold the counterfeit wheels to Plaintiffs' investigator. Defendants have not presented any evidence that contradicts this, besides Varona's self-serving denials in his sham declaration.

Defendants ague that their description of their goods "inform[s] potential customers that its wheels fit Audi vehicles" and thus falls within the nominative fair use doctrine. [ECF No. 70, p. 9, n. 12]. The nominative fair use doctrine "requires a defendant to show that: (1) the plaintiff's mark is necessary to identify plaintiffs product; (2) in doing so defendant does not use more of plaintiffs mark than necessary; and (3) the defendant's conduct or language reflects the true and accurate relationship between plaintiff and defendant's products or services." *TracFone Wireless, Inc. v. Clear Choice Connections, Inc.*, 102 F. Supp. 3d 1321, 1326 (S.D. Fla. 2015) (internal citation omitted).

Defendants have not made that showing here. The subject oemwheelsdirect eBay store listing did not simply state that the wheel set would *fit* Audi vehicles, it advertised new, "OEM' Audi wheel rims and included photographs of what appeared to be an Audi wheel set, with the Audi mark in the center cap. *See Ford Motor Co. v. O.E. Wheel Distributors, LLC*, 868 F. Supp. 2d 1350, 1368 (M.D. Fla. 2012) (finding defense not available for listings advertising "O.E." Ford wheels which are not manufactured by Ford because the listings "fail to reflect the true and accurate relationship between the plaintiff and defendant's products and services"); *see also Daimler AG*, 334 F. Supp. 3d at 1098 (rejecting nominative fair use doctrine).

Further, to the extent that Defendants' rely on the "first sale" doctrine, Defendants do not provide any evidence to rebut Plaintiffs' evidence that the wheels and center caps purchased by Plaintiffs' investigator are counterfeit. *See Daimler AG*, 334 F. Supp. 3d at 1100 (denying the defendant's first sale doctrine defense because defendant did not provide any evidence to rebut Daimler's representative's declaration that the wheels and center caps were counterfeit).[28]

---

[28]    Similarly, it is irrelevant that Defendant may have included disclaimer language buried in the description of the item stating that the item may not be a genuine. *See Rolex Watch U.S.A., Inc. v. Canner*, 645 F. Supp. 484, 493 (S.D. Fla. 1986) ("The fact that an immediate buyer of a $25 counterfeit watch does not entertain any notions that it is the real thing has no place in this analysis. Once a product is injected into commerce, there is no bar to confusion, mistake, or deception occurring at some future point in time."). But here, based on the descriptions included in the listing ("Audi" and "OEM") and the price ($1,577.99), it is unlikely that a buyer would purchase the wheel set believing it to be counterfeit.

Accordingly, Plaintiffs are entitled to summary judgment on Count I for trademark infringement and counterfeiting for Defendants' sale of a counterfeit wheel set to Plaintiffs' investigator.

### B.     Count II – False Designation of Origin (15 U.S.C. § 1125(a))

The elements of a claim for false designation of origin are: "(1) that the plaintiff had enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two." *Tracfone Wireless, Inc. v. Simply Wireless, Inc.*, 229 F. Supp. 3d 1284, 1299 (S.D. Fla. 2017) (citing *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647-48 (11th Cir. 2007). A false designation of origin claim "proscribes the behavior of 'passing off' or 'palming off,' which occurs when a producer misrepresents his own goods or services as someone else's." *Custom Mfg. & Eng'g, Inc.*, 508 F.3d at 647.

As explained above, Plaintiffs have undisputed and enforceable trademark rights in the marks at issue, and Defendants were not authorized at any time to use Plaintiffs' marks. The first element is thus satisfied. Regarding the likelihood of confusion element, "courts evaluating likely confusion in a false designation of origin claim consider the same seven factors as those discussed above in the context of a trademark infringement claim." *Bentley Motors Corp.*, 976 F. Supp. 2d at 1314.

As discussed above, Defendants advertised and sold a wheel set with a center cap mark that is ***identical*** to Plaintiffs' mark, included the same design as the Audi '028 design

(as discussed further below), and advertised the wheel sets as "Audi," "factory," and "OEM." Additionally, it is undisputed that Plaintiffs' mark is strong, Defendants' wheel sets compete with genuine Audi wheel sets (which are also sold on the internet), and intent can be inferred from the identical copying of the Audi mark and design patent and Defendants' advertising.

As the Court has already determined that a likelihood of confusion exists, the second element is satisfied here as well. Plaintiffs are entitled to summary judgment on Count II for false designation of origin.

### C.      Count III – Trademark Dilution (15 U.S.C. 1125(c))

"To prevail on a federal dilution claim, the plaintiff must demonstrate that: (1) the plaintiff's mark is famous; (2) the defendant used the plaintiff's mark after the plaintiff's mark became famous; (3) the defendant's use was commercial and in commerce; and (4) the defendant's use of the plaintiff's mark has likely caused dilution." *Bentley Motors Corp.*, 976 F. Supp. 2d at 1312-13 (citing *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1266-67 (N.D. Fla. 2009)).

First, the Audi trademarks have already been found to be famous and distinctive. *See Audi AG v. D'Amato*, 469 F.3d 534, 547 (6th Cir. 2006) ("It is clear from the record that Audi's trademarks, on which Audi has spent millions of dollars and which are known worldwide, satisfy the first two factors."); *see also Audi AG v. Shokan Coachworks, Inc.*, 592 F. Supp. 2d 246, 280 (N.D.N.Y. 2008) ("Plaintiffs have successfully established the

famousness element of their dilution claim.").

Further, as discussed above, Defendants used the trademarks after the marks become famous; and Defendants' use of the marks was commercial and in commerce as Defendants offered the counterfeit wheel set for sale and actually sold it to Plaintiffs' investigator.

Finally, Defendants' use of identical trademarks on products identical to those sold by Audi is likely to dilute the strength of the Audi trademarks because consumers cannot rely on Audi's trademarks to indicate that Audi is the source of goods bearing these marks. *See, e.g., Shokan Coachworks, Inc.*, 592 F. Supp. 2d at 281 ("The law clearly provides for a presumption of actual dilution where, as here, the marks used by Defendants are identical to Plaintiffs' marks."); *D'Amato*, 469 F.3d at 547 ("Here, D'Amato used identical trademarks on the goods and services on his website, thus fulfilling the fifth factor."); *Bentley Motors Corp.*, 976 F. Supp. 2d at 1314 (finding trademark dilution and awarding summary judgment where Bentley "demonstrated that Defendants' use of marks identical or virtually identical to Bentley's protected marks").

Plaintiffs are entitled to summary judgment on Count III for trademark dilution.

## D.     Count IV – Infringement of U.S. Design Patent No. D721,028 S

"A design patent protects the nonfunctional aspects of an ornamental design as seen as a whole and as shown in the patent." *Pride Family Brands, Inc. v. Carl's Patio, Inc.*, 992 F. Supp. 2d 1214, 1223 (S.D. Fla. 2014) (citing *Amini Innovation Corp. v. Anthony Cal.*,

*Inc.*, 439 F.3d 1365, 1371 (Fed. Cir. 2006)).

Determining whether a design patent is infringed is a two-part test:

First, when appropriate, the design patent's claims are construed. Second, the patented design is compared to the accused device. As the Federal Circuit observed in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008), the Supreme Court established in *Gorham Mfg. Co. v. White*, 81 U.S. 511, 14 Wall. 511, 20 L.Ed. 731 (1871) that the "ordinary observer" test applies to determine whether a design patent is infringed. Under that test "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other." *Gorham*, 81 U.S. at 528.

*Pride Family Brands, Inc.*, 992 F. Supp. 2d at 1223-24.

"The proper comparison requires a side-by-side view of the drawings of the [] patent design and the accused products." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1304 (Fed. Cir. 2010). And "minor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Id.* at 1303 (internal citation omitted).

Here, the '028 patent is an ornamental design for a front face of a vehicle wheel. *See Daimler AG*, 334 F. Supp. 3d at 1102 (describing similar design patent in the same way). A side-by-side comparison reflects that the design of the counterfeit wheel sold by Defendants to Plaintiffs' investigator is the same, or substantially the same, as the design of the '028 patent.



The design appears to be identical such that an ordinary observer, giving such attention as a purchaser usually gives, would be deceived by the substantial similarity between the designs so as to be induced to purchase Defendants' wheel set believing it to be the Audi '028 patent design product.

Similarly, in *Daimler AG*, the Court conducted a side-by-side comparison of the design patent drawing (left) and the alleged infringing wheel rim (right).



The Court found an "ordinary observer would be deceived and could be induced to purchase Defendants' product over Plaintiff's" and granted Daimler's summary

judgment for design patent infringement. *Id.* at p. 1105.

Accordingly, Plaintiffs are entitled to summary judgment on Count IV for design patent infringement.

**E.    Damages**

1.    <u>Permanent Injunction</u>

Plaintiffs first seek a permanent injunction against Defendants. Earlier in the case, Plaintiffs filed a motion for preliminary injunction [ECF No. 14]. Defendants did not object and responded to merely say that that they were not engaging in trademark infringement and thus the issue was moot. [ECF No. 21]. The Court granted Plaintiffs' motion for preliminary injunction and ordered that:

> Defendants are thus enjoined from the use on any products, packaging, or advertising of AUDI RINGS, and any other Audi Trademarks; and from the use of any Audi word mark. Defendants are also enjoined from making, using, selling, offering to sell, or importing products that infringe the claimed design of United States Design Patent No. D721,028 S (the "'028 patent").

[ECF No. 56, p. 2].

Because it appears that Defendants would take the same position here as it relates to a permanent injunction (i.e., we are not infringing Plaintiffs' trademark and design patent rights and thus we have no problem being enjoined from doing so),[29] and because

---

[29]    Defendants did not bother to address Plaintiffs' requested damages other than to say that "because of the existence of fundamental dispute on issues of material facts on these claims, Plaintiffs cannot be afforded any relief." [ECF No. 70, p. 10].

the Court finds that the prerequisites for a permanent injunction have been met,[30] Plaintiffs are entitled to a permanent injunction, as follows: Defendants are thus enjoined from the use on any products, packaging, or advertising of AUDI RINGS, and any other Audi Trademarks; and from the use of any Audi word mark. Defendants are also enjoined from making, using, selling, offering to sell, or importing products that infringe the claimed design of United States Design Patent No. D721,028 S (the "'028 patent").

2.    Statutory Damages Pursuant to 15 U.S.C. § 1117(c)

Next, Plaintiffs seek statutory damages pursuant to 15 U.S.C. § 1117(c), rather than actual damages, for Defendants' trademark infringement. Specifically, Plaintiffs urge the Court to find that $4,000,000 in statutory damages is appropriate to deter Defendants and future infringers and to prevent a potential safety hazard.

As it stands now at the summary judgment stage, the Court finds that Plaintiffs have established summary judgment only on Counts I-IV based on Defendants' advertisement and sale of the specific wheel set sold to Plaintiffs' investigator.

Plaintiffs have provided a PayPal list for other Audi wheel set sales. [ECF No. 66-

---

[30]    The Court finds that Plaintiffs have demonstrated that the following factors weigh in their favor "(1) [Plaintiffs have] suffered an irreparable injury; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardship between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Tiffany (NJ) LLC v. Benefitfortiffany.com*, No. 16-60829-CIV, 2016 WL 8679081, at *5 (S.D. Fla. Nov. 3, 2016). The Court finds compelling Plaintiffs' arguments for each factor, contained at ECF No. 65, pp. 24-25.

2, p. 2]. However, this cursory list does not assure the Court that a jury could not return a verdict for Defendants as it relates to those other sales. To the extent that Defendants did not cooperate in turning over documents during discovery, Plaintiffs should have raised these issues at a discovery hearing. And Plaintiffs did not produce any evidence that the wheel set sold by Defendants to Plaintiffs' investigator poses a safety hazard. Further, Defendants' gross profits for the sale to the investigator are easily determined ($1,577.99).

Thus, the Court does not find it appropriate to award Plaintiffs their requested statutory damages at this time, and the Court will reserve this issue for the scheduled bench trial. If Plaintiffs are seeking statutory damages for the additional sales noted in the PayPal list, they will need to present evidence supporting that those sales satisfy the elements of Counts I-III as well.[31]

### 3.   Design Patent Damages Pursuant to 35 U.S.C. § 289

Defendants found liable for design patent infringement "shall be liable to the [patent] owner to the extent of his total profit, but not less than $250[.]" 35 U.S.C. §289. Thus, Plaintiffs are entitled to recover the "total profit" resulting from sales of

---

[31]      Additionally, the Court notes that Plaintiffs have not established nor briefed the issue of whether Andy Varona should sustain personal liability as a result of corporate conduct. Defendants raised this as an affirmative defense. [ECF No. 53, p. 6 ("As Verotec is an S-corporation, personal liability against its officers or directors cannot be sustained as a result of alleged corporate conduct.")]. But Plaintiffs did not move for summary judgment on this point. Thus, the parties should be prepared to also discuss this at the bench trial.

Defendants' accused counterfeit products. *See Progressive Int'l Corp. v. AMGTM LLC*, No. C17-448 RAJ, 2018 WL 4091694, at *4 (W.D. Wash. Aug. 21, 2018) (granting summary judgment of design patent infringement and awarding the plaintiff $192,950 in net profits from the defendant's sales of the accused product).

Here, Plaintiffs seek $40,615.14, which is the total profit provided in the PayPal list for all sales with Audi wheel rims in the description. However, again, it is unclear whether *all* those sales infringed on Plaintiffs' design patent, as the only information provided for each sale is the description. The gross profit for the sale to Plaintiffs' investigator is $1,577.99. Thus, at this time, the Court is only in a position to award Plaintiffs the $1,577.99 amount. If Plaintiffs are seeking Defendants' profits for those additional sales noted in the PayPal list, they will need to present evidence supporting their contention that these sales satisfy the elements of design patent infringement as well.

### F.    Attorney's Fees and Costs

Lastly, Plaintiffs seek attorney's fees and costs. "The court in *exceptional cases* may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117 (emphasis added). An "exceptional case" is "one that stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Tobinick v. Novella*, 884 F.3d 1110, 1117 (11th Cir. 2018) (internal citation omitted).

The Court is unable to make this determination at this time as to whether this is

an "exceptional case" and reserves ruling on Plaintiffs' request for attorney's fees and costs.

## IV.    Conclusion

For the reasons discussed above, the Court **grants in part** Plaintiffs' motion for summary judgment on Counts I-IV for Defendants' sale of the counterfeit wheel set to Plaintiffs' investigator. *See Kelly v. Dun & Bradstree, Inc.*, 641 F. App'x 922, 923 (11th Cir. 2016) (citing *Van T. Junkins & Assocs., Inc.*, 641 F. App'x at 658) (affirming summary judgment and holding that "a district court may properly grant summary judgment despite conflicts between a party's deposition testimony and later filed-affidavit"). The issue of damages (including for any additional wheel sets) and attorney's fees will be addressed during the scheduled bench trial. The trial will give the Undersigned the opportunity to observe first-hand Mr. Varona's credibility (or lack thereof) for those factual issues on which he did not contradict his prior testimony with a later-filed affidavit.

**DONE and ORDERED** in Chambers, at Miami, Florida, on January 25, 2021.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to**:
All counsel of record

35